## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) | |
| | ) | **COMPLAINT** |
| v. | ) ) | |
| EXPRESS SERVICES, INC., AJK ENTERPRISES, LLC d/b/a EXPRESS EMPLOYMENT PROFESSIONALS and PROFORMANCE GROUP, INC. | ) ) ) ) ) | **JURY TRIAL DEMAND** |
| Defendants. | ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of national origin, Hispanic (Guatemalan), and to provide appropriate relief to Rosmery Diaz Caraballo ("Caraballo"), who was adversely affected by such practices. Specifically, the Equal Employment Opportunity Commission (the "Commission") alleges that Defendants Express Services, Inc. ("ESI"), AJK Enterprises, LLC d/b/a Express Employment Professionals ("Express Employment"), and Proformance Group, Inc. ("Proformance Group") discharged, or in the alternative, failed to hire, Caraballo because of her national origin, Hispanic (Guatemalan).

JURISDICTION AND VENUE

1.      Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3)("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of South Carolina. This lawsuit is being filed in the Greenville Division because a substantial part of the events or omissions giving rise to the claims alleged in this suit occurred within the Greenville Division.

PARTIES

3.     The Commission is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant ESI, a Colorado corporation with headquarters in Oklahoma City, Oklahoma, and franchise offices worldwide, has procured employees for an employer and has been an employment agency within the meaning of Section 701(c) of Title VII, 42 U.S.C. § 2000e(c).

5.     At all relevant times, Defendant ESI has continuously been doing business in the State of South Carolina and the City of Greenville, and has continuously had at least fifteen (15) employees.

6.     At all relevant times, Defendant Express Employment, a South Carolina corporation, has procured employees for an employer and has been an employment agency within the meaning of Section 701(c) of Title VII, 42 U.S.C. § 2000e(c).

7.     At all relevant times, Defendant Express Employment has continuously been doing business in the State of South Carolina and the City of Greenville, and has continuously had at least fifteen (15) employees.

8.     At all relevant times, Defendants ESI and Express Employment have operated as an integrated business enterprise. At all relevant times Defendants, ESI and Express

Employment jointly and/or severally, have continuously been doing business in the State of South Carolina and the City of Greenville.

9. At all relevant times, Defendant Proformance Group, Inc. ("Defendant Proformance Group") has continuously been a South Carolina corporation doing business in the State of South Carolina and the City of Greenville, and has continuously had at least fifteen (15) employees.

10. At all relevant times, Defendants ESI, Express Employment and Proformance Group have continuously been employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

11. At all relevant times, Defendants ESI and Express Employment have operated as joint employers with each other and as joint employers with Defendant Proformance Group.

## STATEMENT OF CLAIMS

12. More than thirty days prior to the institution of this lawsuit, Caraballo filed a charge with the Commission alleging violations of Title VII by Express Employment. More than thirty days prior to the institution of this lawsuit, Caraballo filed a charge with the Commission alleging violations of Title VII by ESI. At that time and at all times relevant to the allegations made in the charge of discrimination and in this lawsuit, Defendant Express Employment and Defendant ESI operated as a single integrated business enterprise or as joint employers of Caraballo. All conditions precedent to the institution of this lawsuit have been fulfilled.

13. More than thirty days prior to the institution of this lawsuit, Caraballo filed a charge with the Commission alleging violations of Title VII by Proformance Group. At that time and at all times relevant to the allegations made in the charge of discrimination and in this lawsuit, Defendant Express Employment and Defendant ESI operated as a joint employer with

3

Proformance Group. All conditions precedent to the institution of this lawsuit have been fulfilled.

14. Caraballo is a Guatemalan-born naturalized United States citizen.

15. On or about October 3, 2008, Defendant Express Employment engaged in unlawful employment practices at its office in Greenville and Proformance Group's Greenville plant, in violation of Section 703(b) of Title VII, 42 U.S.C. §2000e-2(b) by terminating Caraballo or in the alternative by not hiring Caraballo, on the basis of her national origin, Guatemalan, because she was not born in the United States.

16. After October 3, 2008 until the present, Defendant Express Employment engaged in unlawful employment practices at its office in Greenville in violation of Section 703(b) of Title VII, 42 U.S.C. §2000e-2(b) by not hiring Caraballo, on the basis of her national origin, Guatemalan, because she was not born in the United States.

17. On or about October 3, 2008, Defendant ESI engaged in unlawful employment practices at Defendant Express Employment's office in Greenville and Proformance Group's Greenville plant, in violation of Section 703(b) of Title VII, 42 U.S.C. §2000e-2(b) by terminating Caraballo or in the alternative, by not hiring Caraballo, on the basis of her national origin, Guatemalan, because she was not born in the United States.

18. After October 3, 2008 until the present, Defendant ESI engaged in unlawful employment practices at Express Employment's office in Greenville in violation of Section 703(b) of Title VII, 42 U.S.C. §2000e-2(b) by not hiring Caraballo, on the basis of her national origin, Guatemalan, because she was not born in the United States.

19. On or about October 3, 2008, Defendant Proformance Group engaged in unlawful employment practices at its Greenville plant, in violation of Section 703(a)(1) of Title VII, 42

U.S.C. §2000e-2(a)(1) by terminating Caraballo or in the alternative, by not hiring Caraballo, on the basis of her national origin, Guatemalan, because she was not born in the United States.

20. On October 3, 2008, Express Employment and ESI hired Caraballo to work for Proformance Group at its plant in Greenville, South Carolina on a project making control panels for use at a nuclear facility known as the American Centrifuge plant in Piketon, Ohio (the "Project").

21. After starting work on the morning of October 3, 2010, Proformance Group's Estimator/Shop General Manager introduced himself to the new employees and asked Caraballo if she had her birth certificate with her. She did not.

22. Later that morning, Caraballo telephoned Defendant Express Employment and the Express Employment receptionist asked Caraballo if she had her birth certificate with her. Caraballo responded that she did not but that she had her United States passport with her. Caraballo was transferred to another female Express Employment employee who asked Caraballo where she was born. Caraballo replied that she was born in Guatemala, and that her birth certificate was at home, but that she had her United States passport with her. Caraballo told one or both of the Express Employment employees that she is a United States citizen.

23. After returning to work for about ten minutes, Caraballo was asked to go to the office at Defendant Proformance Group's plant. In the office, two Express Employment employees were present, the co-owner of Express Employment and the Outside Sales Representative for Express Employment. They asked Caraballo where she was born and if she had her birth certificate. Again, Caraballo stated that her birth certificate was at home, but offered to show them her United States passport.

24. The Co-owner of Express Employment then told Caraballo that she could not continue to work at Proformance Group because Proformance Group required that she produce a birth certificate to prove that she is a U.S. citizen. Caraballo told the Express Employment Co-owner that although she was born in Guatemala, she is a United States citizen and had her passport with her to prove it. The Express Employment Co-owner responded, "yeah, but you weren't born in America." Express Employment then terminated Caraballo's employment. Prior to being terminated, Caraballo worked approximately two hours at the Proformance Group plant.

25. After Defendant Express Employment and Defendant ESI terminated Caraballo from the Project with Proformance Group, Defendant Express Employment and Defendant ESI did not contact Caraballo for any further assignments.

26. At the time of her discharge, Caraballo was performing the job at a level that met her employers' legitimate expectations.

27. According to Proformance Group, the United States Department of Energy/Nuclear Regulatory Commission required that only United States citizens work on the project on which Caraballo was placed. Proformance Group's Estimator/Shop General Manager claimed that the only documents Proformance Group had on file that had been used to establish U.S. citizenship were birth certificates.

28. Prior to October 3, 2008, Proformance Group provided Express Employment and ESI with a form for verifying an individual's U.S. citizenship status for work on the Project. The form indicated that a U.S. passport is an acceptable form of proof of citizenship. Despite this, prior to October 3, 2008, Proformance Group's Estimator/Shop General Manager communicated to Express Employment that the individuals assigned to the Project must be "natural born" American citizens and must have a U.S. birth certificate.

29.     In addition to acting as a joint employer of Caraballo in terminating her employment, Proformance Group acted as a third-party interferer with respect to Caraballo's employment with Express Employment and ESI by establishing a discriminatory criterion (requirement of a birth certificate from the United States) that it imposed upon the hiring of Express Employment and ESI employees to work at Proformance Group's plant, thereby causing Caraballo to be terminated from the Project at Proformance Group's plant.

30.     The effect of the practices complained of above have been to deprive Caraballo of equal employment opportunities and otherwise adversely affect her status as an employee because of her national origin, Guatemalan.

31.     The unlawful employment practices complained of above were intentional.

32.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Caraballo.

## PRAYER FOR RELIEF

A.     Grant a permanent injunction enjoining Defendant Express Employment, its officers, successors, assigns, and all persons in active concert or participation with it, from failing to hire potential employees or failing to place current employees on the basis of their national origin, or any other employment practice which discriminates on the basis of national origin.

B.     Grant a permanent injunction enjoining Defendant ESI, its officers, successors, assigns, and all persons in active concert or participation with it, from failing to hire potential employees or failing to place current employees on the basis of their national origin, or any other employment practice which discriminates on the basis of national origin.

C.    Grant a permanent injunction enjoining Defendant Proformance Group, its officers, successors, assigns, and all persons in active concert or participation with it, from failing to hire potential employees or discharging current employees on the basis of their national origin, or any other employment practice which discriminates on the basis of national origin.

D.    Order Defendant Express Employment to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees regardless of national origin, and which eradicate the effects of its past and present unlawful employment practices.

E.    Order Defendant ESI to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees regardless of national origin, and which eradicate the effects of its past and present unlawful employment practices.

F.    Order Defendant Proformance Group to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees regardless of national origin, and which eradicate the effects of its past and present unlawful employment practices.

G.    Order Defendant Express Employment to make whole Rosmery Diaz Caraballo by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practice, including but not limited to reinstatement.

H.    Order Defendant ESI to make whole Rosmery Diaz Caraballo by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practice, including but not limited to reinstatement.

I.  Order Defendant Proformance Group to make whole Rosmery Diaz Caraballo by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practice, including but not limited to reinstatement.

J.  Order Defendant Express Employment to make whole Rosmery Diaz Caraballo by providing compensation for pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

K.  Order Defendant ESI to make whole Rosmery Diaz Caraballo by providing compensation for pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

L.  Order Defendant Proformance Group to make whole Rosmery Diaz Caraballo by providing compensation for pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

M.  Order Defendant Express Employment to make whole Rosmery Diaz Caraballo by providing compensation for non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional distress, suffering, stress, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights in amounts to be determined at trial.

N.  Order Defendant ESI to make whole Rosmery Diaz Caraballo by providing compensation for non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional distress, suffering, stress, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights in amounts to be determined at trial.

O.  Order Defendant Proformance Group to make whole Rosmery Diaz Caraballo by providing compensation for non-pecuniary losses resulting from the unlawful practices complained above, including but not limited to emotional distress, suffering, stress, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights in amounts to be determined at trial.

P.  Order Defendant Express Employment to pay Rosmery Diaz Caraballo punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

Q.  Order Defendant ESI to pay Rosmery Diaz Caraballo punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

R.  Order Proformance Group to pay Rosmery Diaz Caraballo punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

S.  Grant such further relief as the Court deems necessary and proper in the public interest.

T.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

    EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION

    P. DAVID LOPEZ
    General Counsel

    JAMES L. LEE
    Deputy General Counsel

    GWENDOLYN YOUNG REAMS
    Associate General Counsel
    Equal Employment Opportunity Commission

        131 M Street, NW
        Washington, D.C. 20507


        LYNETTE A. BARNES
        Regional Attorney

        TINA BURNSIDE
        Supervisory Trial Attorney

        **s/ Nicholas G. Walter**
        NICHOLAS G. WALTER
        Trial Attorney
        Fed. Bar No. 9975
        Equal Employment Opportunity Commission
        Charlotte District Office
        129 W. Trade Street, Suite 400
        Charlotte, N.C. 28202
        Telephone:    704.954.6472
        Facsimile:     704.954.6412
        Email:           nicholas.walter@eeoc.gov

        ATTORNEYS FOR PLAINTIFF